FILED'06 AUG 04 10:11 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,
                                        05-CR-333-BR

                Plaintiff,               OPINION AND ORDER

v.

DAVID BACON,

                Defendant.


**KARIN J. IMMERGUT**
United States Attorney
**THOMAS H. EDMONDS**
Assistant United States Attorney
1000 S.W. Third, Suite 600
Portland, OR  97204
(503) 727-1000

        Attorneys for Plaintiff


1  -  OPINION AND ORDER

**JAMES E. LEUENBERGER**
James E. Leuenberger PC
4800 S.W. Meadows Road, Suite 300
P. O. Box 1684
Lake Oswego, OR   97035
(503) 534-3636

Attorney for Defendant

**BROWN, Judge.**

This matter comes before the Court on Defendant David

Bacon's Motion to Suppress Evidence Obtained During Execution of

Search Warrant (#27) and Motion to Controvert (#33).  For the

reasons that follow, the Court **DENIES** Defendant's Motions.


**BACKGROUND**

Defendant is charged in a ten-count Superseding Indictment

with committing various firearms offenses between March 18, 2005,

and August 10, 2005.  In Counts 1, 5, 7, 8, 9, and 10, the

government alleges Defendant, an Oregon resident who does not

hold a Federal Firearms License (FFL), "willfully transferred,

sold or delivered" various firearms to a resident of the State of

Washington in violation of 18 U.S.C. §§ 922(a)(5) and

924(a)(1)(D).  In addition, the government alleges in Counts 2,

3, 4, and 6 that, in connection with certain firearms

transactions, Defendant knowingly made false statements or

representations about information required to be kept in the

records of FFL holders in violation of 18 U.S.C. § 924(a)(1)(A).

2  -  OPINION AND ORDER

In his Motion to Suppress, Defendant seeks an order suppressing all of the evidence seized by government agents on September 1, 2005, when they executed certain search warrants, including one for the residence of Defendant's mother where Defendant was staying.  As noted below, Defendant raises issues concerning changes that were made in the form of this Search Warrant after it was initially issued by the magistrate judge. In particular, Defendant contends the agents who seized the evidence violated Federal Rule of Criminal Procedure 41 when they allegedly failed at the beginning of the search to present and to read to Defendant's mother the particular Search Warrant then in effect.   In addition, Defendant asserts the Affidavit supporting that Search Warrant did not provide a sufficient basis for the issuing magistrate judge to find probable cause that Defendant had transferred firearms unlawfully to an out-of-state resident or that Defendant's residence contained evidence of any crime.

On June 14, 2006, the Court conducted an evidentiary hearing on this Motion.  The parties thereafter submitted supplemental briefs in support of their arguments.

On July 5, 2006, Defendant filed a Motion to Controvert in which he asserts the Affidavit supporting the Search Warrant contained misleading statements about federal firearms laws and omitted material facts pertinent to the magistrate judge's probable-cause determination.

3  -  OPINION AND ORDER

After the parties completed their briefing of these issues, the Court took Defendant's Motions under advisement on July 21, 2006.

## DEFENDANT'S MOTION TO SUPPRESS

### Findings of Fact

The Court has weighed and evaluated all of the evidence and finds the following facts by a preponderance of the evidence:

1. After an informant's tip in late 2004, agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), including Special Agent (SA) Michael McNall of Portland, began to investigate suspected federal firearms offenses committed by Alexander Osinski. The investigation spanned several months and included surveillance and undercover work. Defendant, who shared a table with Osinski at various gun shows in Oregon and elsewhere, was a collateral focus in the investigation.

2. By the summer of 2005, SA McNall believed the investigation had produced sufficient probable cause to support criminal charges against both Osinski and Defendant and to support search warrants for their persons, residences, and vehicles. The Court notes the Grand Jury originally charged Osinski and Defendant by way of separate sealed Indictments returned on August 23, 2005, and Arrest Warrants issued for each of them on August 24, 2005.

3.   On August 30, 2005, SA McNall submitted to the
Honorable Donald C. Ashmanskas, Magistrate Judge, an "Application
and Affidavit for Search Warrant" that included a five-page
"Bacon Residence Attachment A" and a 55-page Affidavit that
included numerous attachments in support of SA McNall's request
for multiple search warrants.  In particular, SA McNall sought
search warrants for the residence of Defendant's mother in Eagle
Creek, Oregon, where Defendant had been staying; the silver Volvo
that Defendant had been driving; a motor home at the Eagle Creek
site associated with Defendant; Osinski's residence in Coos Bay,
Oregon; Osinski's Ford Focus; and the Coquille, Oregon, residence
of FFL holder Mark Pinkston through whose FFL certain of the
suspected illegal transactions were recorded.  A copy of the
"Application and Affidavit for Search Warrant" (also known as a
warrant "face sheet") and the five-page "Bacon Residence
Attachment A" in the form SA McNall originally submitted them was
received in evidence at the suppression hearing as Exhibit 2.  In
addition, a copy of the 55-page Affidavit and attachments in the
form that SA McNall originally submitted them was received in
evidence as Exhibit 3.

4.   After considering SA McNall's sworn presentation and
Affidavit, Magistrate Judge Ashmanskas issued various Search
Warrants at 11:38 a.m., August 30, 2005, including a Search
Warrant that stated in part:

> Affidavit(s) having been made before me by [unfilled blank] who has reason to believe that [X] on the person of or [X] on the premises known as or [X] in the property described as . . . .
>
> David Bacon is a white male, born September 1, 1973, is approximately 6'0 in height and weighs approximately 200 lbs.
>
> 30838 SE Riverside Way Unit 2, Eagle Creek, Oregon is described as an individual double-wide mobile home in a mobile home park . . . .
>
> SEE ATTACHMENT A, incorporated as part of warrant
>
> I am satisfied that the affidavit(s) . . . establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and established grounds for the issuance of this warrant.

In addition, this Search Warrant directed federal agents

> to search . . . the person or place named above for the person or property specified, serving this warrant and making the search . . . and if the person or property to be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized . . . as required by law.

A copy of this Search Warrant in the form originally issued together with the "Bacon Residence Attachment A" was received in evidence as Exhibit 1. For clarity, the Court will refer to this form of the Search Warrant as "the original Search Warrant." The original Search Warrant included handwritten X's in each of three optional boxes on the face of the warrant preceding choices describing a person, premises, and/or property to be searched.

     5.   Because there were multiple warrants to serve at various widespread locations around the State of Oregon, several

ATF agents, including some from outside of the District of Oregon, were assigned to work with Oregon agents to coordinate the searches.  On August 31, 2005, 30-35 agents gathered in Portland for a briefing to receive their respective assignments in preparation for execution of the warrants the next day, September 1, 2005.  The plan was for the agents to arrest Osinski and Bacon in different locations at about the same time and, after Osinski and Bacon were in custody, to execute the search warrants at the various locations at about the same time.

6.   On the evening of August 31, 2005, one of the participating agents contacted SA McNall after the briefing and inquired why the Search Warrants for the various residences did not explicitly refer to "curtilage" or to "outbuildings."  From SA McNall's perspective, this was an oversight because at least one undercover buy involving Osinski occurred in an outbuilding on Osinski's residential premises.  SA McNall went to his office that evening and prepared new forms of search warrants for each of the residences in an effort to avoid any problem.  SA McNall included explicit references to "curtilage and outbuildings" in the new forms and intended for these forms to be presented to Magistrate Judge Ashmanskas before the original warrants were executed the next day.  As to Defendant's residence, SA McNall added the words "The residence, outbuildings, curtilage and vehicles located at" to the language of the original Search

Warrant immediately before the existing reference to Defendant's address and, thus, created a new form of warrant for the search of Defendant's residence to be presented to the magistrate judge.

7.    The next morning before the originally-issued warrants were executed, SA McNall contacted Assistant United States Attorney (AUSA) Thomas H. Edmonds, explained the lack of reference to "curtilage and outbuildings" in the warrants, and electronically transmitted to AUSA Edmonds the updated forms of search warrant that included the changed text.  SA McNall asked AUSA Edmonds to present these new forms to Magistrate Judge Ashmanskas.  Because the amended search warrants were transmitted electronically, however, the print-out of the document for the search of Defendant's residence did not show any handwritten X's next to the words "on the person of," "on the premises known as," or "in the property described as."  Moreover, neither SA McNall nor AUSA Edmonds noticed the absence of the X's that were present on the original Search Warrant.

8.    As requested, AUSA Edmonds presented to Magistrate Judge Ashmanskas print-outs of the amended search warrants for Defendant's residence and the other residences.  At 9:45 a.m. on September 1, 2005, Magistrate Judge Ashmanskas signed the amended version of the Search Warrant for Defendant's residence and the amended versions of the search warrants for the other residences. It appears Magistrate Judge Ashmanskas instructed AUSA Edmonds to

8  -  OPINION AND ORDER

have SA McNall return to court to submit another "Application and
Affidavit for Search Warrant" or "face sheet" in a form
consistent with the language added to the original Search
Warrant.

9.   As noted, the form of the Search Warrant that
Magistrate Judge Ashmanskas signed at 9:45 a.m. included the
words "The residence, outbuildings, curtilage and vehicles
located at 30838 SE Riverside Way Unit 2, Eagle Creek, Oregon,"
but did not include any X's in the boxes next to the words "on
the person of," "on the premises known as," or "in the property
described as."  A copy of this form of the Search Warrant was
received in evidence as Exhibit 4.  For clarity, the Court will
refer to this form of the Search Warrant as "the amended Search
Warrant."

10.   At 9:58 a.m. on September 1, 2005, AUSA Edmonds
transmitted the amended Search Warrant (and the other amended
search warrants) via fax to an ATF office in Portland.

11.   SA Supervisor Michael Scott McKinna was the ATF agent
assigned to supervise the execution of the warrant for
Defendant's arrest and the search warrants involving Defendant's
residence and vehicle.  While SA Supervisor McKinna was en route
to his assigned tasks and before any of these warrants were
served, he received word that an "updated" search warrant would
be forthcoming that specifically included "curtilage" and

"outbuildings" in the premises to be searched at Defendant's
residence.

12.   Shortly after 10:00 a.m., SA Supervisor McKinna
directed the arrest of Defendant pursuant to the August 24, 2005,
Arrest Warrant.  SA Supervisor McKinna requested Gregory
Schellins, a uniformed Clackamas County Sheriff's deputy who was
driving a marked patrol vehicle, to make a traffic stop of
Defendant's vehicle as Defendant drove away from his residence.
In the course of the traffic stop, Defendant was handcuffed and
placed in the back of the deputy's vehicle.  The deputy drove the
Defendant to a cul-de-sac "staging area" where SA Supervisor
McKinna and other ATF agents were waiting for word that Osinski
was in custody and for direction to proceed to execute the search
warrants for Defendant's residence and vehicle.

13.   While at the staging area, Deputy Schellins received
word to go to the Sheriff's Office Substation in Estacada,
Oregon, to retrieve some faxed documents for the ATF agents.
Defendant was removed from the deputy's car, and Deputy Schellins
drove alone to the Substation.  He picked up "some pages of
FAXes" and took them back to the staging area.  At the time of
the evidentiary hearing, SA Supervisor McKinna still had in his
possession two pages of the faxed papers that he received from
Deputy Schellins at the staging area.  SA Supervisor McKinna
identified these pages as a copy of the amended Search Warrant

10 -  OPINION AND ORDER

for the Osinski residence with explicit references to
"outbuildings" and "curtilage."  SA Supervisor McKinna's pages
bear a fax transmission date and time of September 1, 2005, 11:29
a.m., from "ATF Portland."  The Court infers from these
circumstances that ATF personnel in Portland transmitted papers
that included the amended Search Warrant for Defendant's
residence to the Sheriff's Office Sub-station at 11:29 a.m. and
that Deputy Schellins retrieved these papers, returned to the
staging area with them, and delivered them to SA Supervisor
McKinna.  Shortly thereafter, Deputy Schellins returned Defendant
to the back of the patrol car.

    14.  At about 11:50 a.m., SA Supervisor McKinna received
word to proceed to the Bacon residence for the search.  About ten
law enforcement personnel, including SA Supervisor McKinna, other
ATF agents, and Deputy Schellins who was transporting Defendant,
all arrived at the Bacon residence about noon.  Although
Schellins was the only one in a police uniform, all of the ATF
agents were wearing vests or shirts with embroidered badges and
the letters "ATF."

    15.  At the time the agents arrived, Defendant's mother,
Beverly Diane Bacon, was outside feeding chickens.  SA Supervisor
McKinna and SA Michael Bryan Stewart approached Ms. Bacon while
other agents went to the front door of the mobile-home residence.
Deputy Schellins stayed with Defendant, who was still in the

11 -  OPINION AND ORDER

deputy's car.  SA Supervisor McKinna explained to Ms. Bacon that
he and the others were federal agents, her son was in their
custody based on an arrest warrant, and the agents were there to
search her residence pursuant to a search warrant.  The agents
asked several times whether anyone else was present at the
property or in the residence and whether Ms. Bacon would open the
front door, which was locked.  Although Ms. Bacon was upset and
confused by these circumstances, she responded to the agents'
questions.  She stated no one else was present, she would unlock
the front door, and she wanted to see and to review the search
warrant.  After SA Supervisor McKinna showed her that he had
papers in his hand with the words "Search Warrant" plainly
visible, Ms. Bacon led him and SA Stewart to the back door and
into the kitchen.  One of the agents, in turn, unlocked and
opened the front door to allow the other agents to enter.

16.  Immediately upon entering the residence, some of the
agents walked through to confirm that no one else was present
while SA Supervisor McKinna remained with Ms. Bacon in the
kitchen and read to her the text of the amended Search Warrant
for the residence, its Attachment A, and the text for the Search
Warrant for Defendant's Volvo as well as its identical Attachment
A.  Ms. Bacon asked to have copies of the warrants to read for
herself.  The agents allowed her to take a more comfortable seat
in the living room and left copies of the just-read warrants and

12 -  OPINION AND ORDER

Attachment A for her to review.  SA Stewart stayed with
Ms. Bacon most of the time while the searches were underway.
Ms. Bacon was watching television news coverage of Hurricane
Katrina and seemed only to peruse the warrant papers from time to
time.

17.  As the searches progressed, the agents became aware
that Ms. Bacon had access to a storage room in a nearby
outbuilding belonging to her landlord.  SA Supervisor McKinna
scrutinized the amended Search Warrant in an effort to determine
whether Ms. Bacon's storage room inside the landlord's
outbuilding was actually on the premises that Ms. Bacon was
renting and, therefore, within the scope of the "curtilage and
outbuildings" language in the warrant.  When reviewing the
amended Search Warrant, however, SA Supervisor McKinna noticed
there were not any X's in the boxes on the upper portion of the
warrant.  SA Supervisor McKinna telephoned SA McNall and
discussed this issue and the matter involving Ms. Bacon's storage
room.  SA McNall told SA Supervisor McKinna that he was returning
to Magistrate Judge Ashmanskas anyway to present an amended
"Application and Affidavit for Search Warrant" as he had been
instructed to do, and, in the process, he would take care of the
issue with the unchecked boxes.  SA Supervisor McKinna and SA
McNall also discussed the possibility of Ms. Bacon giving written
consent for a search of the storage room.

13 -  OPINION AND ORDER

18.   Sometime between an hour or two after the agents arrived (*i.e.*, between approximately 1:00 p.m. and 2:00 p.m.), Ms. Bacon signed a written consent form giving her permission to the agents to search the storage room.

19.   In the meantime, SA McNall returned to Magistrate Judge Ashmanskas with an amended "Application and Affidavit for Search Warrant" that included explicit references to "outbuildings" and "curtilage."  While in Magistrate Judge Ashmanskas's presence but without bringing the issue to his attention, SA McNall placed X's in the empty boxes on the amended Application and in the empty boxes on the amended Search Warrant that Magistrate Judge Ashmanskas had signed at 9:45 a.m. that morning and that SA McNall brought with him.  Magistrate Judge Ashmanskas signed the amended Application, and SA McNall filed it with the Clerk of Court at 2:00 p.m.  A copy of the amended Application was received in evidence as Exhibit 6.  A copy of the amended Search Warrant with the X's that SA McNall placed in the boxes was received in evidence as the first page of Exhibit 5.

20.   While the agents were searching, Deputy Schellins left the Bacon residence scene with the Defendant still in custody and transported him to downtown Portland to be lodged in jail. Dispatch records associate this activity with 2:18 p.m. although it is not clear whether that is when Schellins left the Bacon residence or arrived at the jail.

14 -  OPINION AND ORDER

21.  In that same period, SA McNall arranged to have faxed copies of the amended Application (Exhibit 6) and the amended Search Warrant with the X's that SA McNall placed in the boxes (first page of Exhibit 5) transmitted to the Sheriff's Office Substation in Estacada.  The transmission occurred at 2:41 p.m.

22.  SA Supervisor McKinna learned these papers had been faxed to the Sheriff's Office Substation.  After the agents completed the searches and inventories at the Bacon residence, SA Supervisor McKinna went to the Substation, telephoned for a deputy to come to unlock the Substation, and obtained from the deputy the newly faxed materials.  About 5:30 p.m., SA Supervisor McKinna returned to the Bacon residence and left with Ms. Bacon copies of Exhibit 5, Exhibit 6, and the receipt for and inventory of the items seized.

23.  Later that day, Steven Bacon, Defendant's brother, came to the residence and picked up all of the warrant paperwork that was there.  Steven Bacon, however, did not see any warrant documents without X's in the boxes; *i.e.,* all of the warrant documents he saw contained X's in the boxes.

## Discussion

**I.  Government agents did not violate Federal Rule of Criminal Procedure 41.**

### A.    Standards

Federal Rule of Criminal Procedure 41(f) provides:

Executing and Returning the Warrant.

15 -  OPINION AND ORDER

(1) Noting the Time.  The officer executing the warrant must enter on its face the exact date and time it is executed.

(2) Inventory.  An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. The officer must do so in the presence of another officer and the person from whom, or from whose premises, the property was taken. If either one is not present, the officer must prepare and verify the inventory in the presence of at least one other credible person.

(3) Receipt.  The officer executing the warrant must:

> (A) give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken; or

> (B) leave a copy of the warrant and receipt at the place where the officer took the property.

(4) Return.  The officer executing the warrant must promptly return it--together with a copy of the inventory--to the magistrate judge designated on the warrant. The judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant.

In the Ninth Circuit, a federal agent serving a search warrant must satisfy the requirements of Rule 41(f)(3) at the outset of the search.  *United States v.* Williamson, 439 F.3d 1125, 1132 (9th Cir. 2006)(citing *United States v. Gantt*, 194 F.3d 987, 996 (9th Cir. 1999).  Although this rule has been questioned, it remains as controlling authority in the Ninth Circuit.  *Id.*

16 -  OPINION AND ORDER

**B.    Analysis**

As noted, Defendant seeks to suppress the evidence seized
pursuant to the search warrant served at his mother's residence.
Defendant contends the agents who seized the evidence violated
Rule 41 when they allegedly failed at the beginning of the search
to present and to read to Defendant's mother the particular form
of search warrant that was then in effect.

Consistent with the Court's factual findings, the Court is
satisfied the government has established SA Supervisor McKinna
read all of the amended Search Warrant, including Attachment A,
to Defendant's mother at the outset of the search.  In addition,
the government proved SA Supervisor McKinna gave to Ms. Bacon a
complete copy of the warrant documents for her to review while
she was seated in the living room and the search progressed.  The
fact that the amended Search Warrant initially handed to
Ms. Bacon did not contain X's in the appropriate boxes appears to
be merely a clerical oversight.  The Court notes all of the X's
were present in the original Search Warrant that Judge Ashmanskas
signed.  In addition, the Court concludes the lack of X's in the
amended Search Warrant initially read to Defendant's mother was
not material under these circumstances because the text of the
Search Warrant clearly conveyed the scope of the agents'
authority at the outset of the search.

In addition, the government also established that

SA Supervisor McKinna left with Defendant's mother a copy of the amended Search Warrant that contained X's in the appropriate boxes together with a complete receipt for all of the evidence that was seized at the conclusion of the search.

For these reasons, the Court concludes the government's agents did not violate Federal Rule of Criminal Procedure 41 under the circumstances of this case.

**II.  The Affidavit supporting the Search Warrant provided a sufficient basis for the issuing magistrate judge to find probable cause that Defendant had unlawfully transferred firearms to an out-of-state resident and that Defendant's residence contained evidence of firearms crimes.**

**A.  Standards**

The Warrant Clause of the Fourth Amendment "requires compliance with two related but distinct rules." *United States v. Gourde*, 382 F.3d, 1003, 1008 (9th Cir. 2004).  "First, [a search warrant] must describe the place to be searched or things to be seized with sufficient particularity, taking account of the circumstances of the case and the types of items involved. Second, it must be no broader than the probable cause on which it is based."  *Id*. (internal citations omitted).

The role of a magistrate judge in reviewing a warrant application is to determine whether, "given all the circumstances set forth in the affidavit, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The facts presented in the affidavit "must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued." *United States v. Greany*, 929 F.2d 523, 524-25 (9th Cir. 1991). A magistrate judge's finding of probable cause is entitled to great deference, and a reviewing court will not find a search warrant invalid if the magistrate judge had a "substantial basis" for concluding that the supporting affidavit established probable cause. *United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994). As the Ninth Circuit has held:

> Probable cause exists when the magistrate judge finds that, "[c]onsidering the totality of the circumstances," there is "'a fair probability that contraband or evidence of a crime will be found.'" *United States v. Gil*, 58 F.3d 1414, 1419 (9th Cir. 1995)(quoting *Illinois v. Gates*, 462 U.S. 213 (1983)).

*United States v. Reeves*, 210 F.3d 1041, 1046 (9th Cir. 2000).

### B.   Analysis

#### 1.   Probable cause existed to believe Defendant engaged in illegal firearms transactions.

Pursuant to 18 U.S.C. § 922(a)(5), it is unlawful for any person who does not hold a federal firearms license to "transfer, sell, trade, give, transport, or deliver any firearm to any person" who also does not hold such a license and who "the transferor knows or has reasonable cause to believe does not reside in (or if the person is a corporation or other business entity, does not maintain a place of business in) the State in

19 -  OPINION AND ORDER

which the transferor resides."

Defendant argues SA McNall's Affidavit and Application for Search Warrant did not establish probable cause to believe Defendant violated § 922(a)(5) because the person to whom Defendant allegedly sold firearms (SA Ben Zeisemer) was, in fact, an undercover ATF agent who worked in ATF's Portland, Oregon, office and who allegedly is, like the Defendant, an Oregon resident. Thus, Defendant contends any sale he made to this agent could not violate § 922(a)(5), and, therefore, there was insufficient evidence to support a finding of probable cause to believe Defendant violated § 922(a)(5).

In response, the government correctly notes the Court is unable to consider this argument in the context of Defendant's Motion to Suppress because the fact that the agent may work in Portland does not appear in SA McNall's submission to the magistrate judge and Defendant did not support his argument with any showing that SA McNall falsely asserted the agent's Washington residency. *See Franks v. Delaware*, 438 U.S. 154, 170 (1978).

In order to invoke a *Franks* hearing to challenge the facts in an affidavit seeking a search warrant, a defendant must make "a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to

support a finding of probable cause."  *United States v. Stanert*,

762 F.2d 775, 780 (9th Cir. 1985).  Defendant has not made any

such showing in support of his Motion to Suppress, and,

therefore, the Court does not reach this argument.

        **2.  Probable cause existed to support a search of**
        **Defendant's residence and vehicle.**

        According to the Defendant, SA McNall's Affidavit and

Application for Search Warrant did not provide any factual basis

for the magistrate judge to conclude that evidence of firearms

offenses would be found at the Bacon residence or in Defendant's

vehicle.  Because he is not a licensed firearms dealer, Defendant

contends there is not any reason to expect evidence of crimes

involving the sale of firearms to out-of-state residents would be

found at his home or in his car.  In response, the government

points to numerous references in SA McNall's Affidavit and

Application for Search Warrant from which the magistrate judge

could conclude Defendant, an Oregon resident, repeatedly sold

firearms to a person who identified himself to Defendant as a

resident of the State of Washington.

        As noted, the issue is whether the Affidavit was

sufficient for the magistrate judge to conclude, under the

totality of the circumstances, there was a "fair probability"

that contraband or evidence of firearms crimes would be found in

Defendant's residence and vehicle.  Contrary to Defendant's

argument, the fact that Defendant is not a licensed firearms

21 -  OPINION AND ORDER

dealer does not rule out a common-sense inference that a search
of Defendant's residence and vehicle likely would produce, at a
minimum, records and other evidence of Defendant's numerous
firearms transactions.  Indeed, it is reasonable to believe a
person who engaged in the many transactions that Defendant
conducted would record financial and other data about such
transactions.  Moreover, it is reasonable to believe that a
search of Defendant's residence and car likely would lead to
proceeds of the transactions.

In light of the totality of the circumstances presented
to the magistrate judge, the Court finds there was "a
'substantial basis' for concluding that the supporting affidavit
established probable cause."  *See United States v. Clark*, 31 F.3d
at 834.

Accordingly, to the extent Defendant seeks to suppress
the evidence seized when agents executed the various search
warrants authorized by the magistrate judge, the Court denies
Defendant's Motion to Suppress (#27).

## DEFENDANT'S MOTION TO CONTROVERT

In his Motion to Controvert, Defendant asserts SA McNall's
Affidavit supporting the Search Warrant contained misleading
statements about federal firearms laws and omitted material facts
pertinent to the magistrate judge's probable cause determination.

Thus, Defendant contends he is entitled to suppression of all of the evidence seized pursuant to the search warrants issued on the strength of SA McNall's Affidavit.

### A.    Standards

As noted, in order to challenge the facts in an affidavit proffered in support of a search warrant, a defendant must make "a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *United States v. Stanert*, 762 F.2d 775, 780 (9th Cir. 1985)(citing *Franks v. Delaware*, 438 U.S. 154, 170 (1978)).

### B.    Discussion

The Court has considered all of Defendant's arguments that SA McNall made allegedly false or misleading statements in his Affidavit.  In general, the Court concludes Defendant's arguments fall far short of the required showing that the Affidavit contained "intentionally or recklessly false statements" and that the Affidavit would not support a finding of probable cause in the absence of such statements.

In addition, for purposes of Defendant's Motion to Controvert, the Court concludes it need not resolve at this stage of the proceedings Defendant's legal contention that SA Zeisemer's affiliation with the ATF Portland, Oregon, office

23 -  OPINION AND ORDER

renders SA Zeisemer a resident of the State of Oregon for purposes of §§ 922(a)(5) and 924(a)(1)(D) and that SA McNall, therefore, was bound to disclose in his Affidavit SA Zeisemer's purported residence.  The Court notes Defendant has not identified any legal authority to establish the residency rule that he advocates as a matter of law.  Thus, Defendant has not shown SA McNall proffered "intentionally or recklessly false statements" when he identified SA Zeisemer as a resident of the State of Washington and failed to disclose his affiliation with the ATF Portland, Oregon, office.

Accordingly, the Court denies Defendant's Motion to Controvert (#33).

### CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion to Suppress Evidence Obtained During Execution of Search Warrant (#27) and Defendant's Motion to Controvert (#33).

IT IS SO ORDERED.
DATED this 3rd day of August, 2006.


_____
ANNA J. BROWN
United States District Judge

24 - OPINION AND ORDER