FILED'07 FEB 15 12:01USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                          05-CR-333-BR

                    Plaintiff,                     OPINION AND ORDER

v.

DAVID BACON,

                    Defendant.


**KARIN J. IMMERGUT**
United States Attorney
**THOMAS H. EDMONDS**
Assistant United States Attorney
1000 S.W. Third, Suite 600
Portland, OR  97204
(503) 727-1000

                    Attorneys for Plaintiff

**JAMES E. LEUENBERGER**
James E. Leuenberger PC
4800 S.W. Meadows Road, Suite 300
P. O. Box 1684
Lake Oswego, OR  97035
(503) 534-3636

                    Attorney for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant David
Bacon's Motion for Arrest of Judgment (#89).  For the reasons
that follow, the Court **DENIES** Defendant's Motion and directs the
Clerk of Court to enter the Judgment of Conviction consistent
with the sentence imposed in open court on January 9, 2007.


## BACKGROUND

Defendant was charged in a ten-count Superseding Indictment
with committing various firearms offenses between March 18, 2005,
and August 10, 2005.  At the time of trial, the government
proceeded on six of the Counts (Counts 5-10, which were
renumbered as Counts 1-6).

In the new Counts 1, 3, 4, 5, and 6, the government alleged
Defendant, an Oregon resident who does not hold a Federal
Firearms License (FFL), "willfully transferred, sold or
delivered" various firearms to a resident of the State of
Washington in violation of 18 U.S.C. §§ 922(a)(5) and
924(a)(1)(D).  In the new Count 2, the government alleged
Defendant violated 18 U.S.C. § 924(a)(1)(A) by knowingly making
false statements or representations in connection with certain
firearms transactions about information required to be kept in
the records of FFL holders.

After a trial, the jury convicted Defendant on all six

2 - OPINION AND ORDER

counts on October 20, 2006.  On October 26, 2006, Defendant filed a Motion for New Trial on the grounds that the government allegedly violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it (1) failed to produce pretrial a Starbucks receipt showing the purchase of coffee and a cookie in Milwaukie, Oregon, shortly before 9:00 a.m. on July 24, 2005; (2) failed to produce pretrial the page of Steve Bacon's July 24, 2005, 4473 Form that contained thumb prints; and (3) either failed to trace or to produce the results of the tracing of the Ruger pistol sold to Agent Ziesemer on May 1, 2005.  Defendant asserted these alleged *Brady* violations warranted a new trial.

On November 28, 2006, the Court issued an Opinion and Order denying Defendant's Motion for New Trial on the ground that Defendant had not established the government violated *Brady v. Maryland*.

On December 5, 2006, Defendant filed a Motion for Reconsideration of the Court's November 28, 2006, Opinion and Order on the following grounds:  (1) Defendant's conviction was based on the perjured testimony of Scott Carrie, (2) Defendant did not receive a copy of the Starbucks receipt until the day after Defendant testified, and (3) prosecutorial misconduct.

On December 21, 2006, the Court issued an Opinion and Order in which the Court granted Defendant's Motion for Reconsideration of the Court's November 28, 2006, Opinion and Order, but adhered

to its conclusion that Defendant had not established grounds for
a new trial.

On December 26, 2006, Defendant filed a Motion for
Reconsideration of the Court's December 21, 2006, Opinion and
Order on the ground that the Court should make its own
credibility determination on the question of when Defendant
transferred the firearm to Scott Carrie on July 24, 2005.   On
January 8, 2007, the Court issued an Opinion and Order in which
it granted Defendant's Motion for Reconsideration, but adhered to
both its November 28, 2006, Opinion and Order in which it
concluded Defendant had not established grounds for a new trial
and to its December 21, 2006, Opinion and Order in which it again
adhered to the November 28, 2006, decision.

On January 9, 2007, the Court held a sentencing hearing.
Shortly before the hearing, Defendant submitted a Motion for
Arrest of Judgment, which he electronically filed as a Motion to
Vacate Sentence under 28 U.S.C. § 2255.   At the hearing, defense
counsel advised the Court that Defendant did not actually intend
to file his Motion pursuant to § 2255, and, in fact, the Motion
did not contain any reference to § 2255.   In any event, a
defendant may not file a motion under § 2255 until his judgment
of conviction becomes final.   Here, even though the Court imposed
sentence, the Court has not yet entered a judgment, and Defendant
has not pursued his rights on appeal.   Thus, to the extent

4 - OPINION AND ORDER

Defendant filed this Motion under § 2255, the Court denies it as premature.

Accordingly, the Court directs the Clerk of Court to terminate civil case 07-CV-7000 and to file Defendant's Motion for Arrest of Judgment in criminal case 03-CR-555 only.


## DISCUSSION

Defendant seeks an order arresting judgment in this matter on the ground that the Court does not have jurisdiction because the statutes under which Defendant was convicted are unconstitutional. Specifically, Defendant contends 18 U.S.C. §§ 922(a)(5), 924(a)(1)(D), and 924(a)(1)(A) impermissibly infringe the State of Washington's right to regulate the possession and use of firearms in violation of the Second, Ninth, and Tenth Amendments and the Export Clause of the United States Constitution.

The government contends Defendant's Motion is untimely and, in any event, without merit.

## I.    Timeliness of Defendant's Motion.

Under Federal Rule of Civil Procedure 34, a defendant's motion for arrest of judgment must be filed within seven days of a guilty verdict. The verdict in this case was entered on October 20, 2006, and Defendant filed his Motion for Arrest of Judgment on January 9, 2007. The government contends, therefore,

Defendant's Motion is untimely.  Defendant, however, asserts his
Motion is a challenge to the Court's jurisdiction and, therefore,
may be raised at any time.  *See United States v. Hays*, 515 U.S.
737, 742 (1995)(noting challenges to subject matter jurisdiction
cannot be waived and may be raised at any point in the
proceeding).

Even if Defendant's Motion was timely filed, however, the
Court concludes below that it is without merit.  Accordingly, the
Court need not resolve the issue whether the motion was timely
filed.

## II.  The Tenth Amendment Does Not Render 18 U.S.C. §§ 922(a)(5), 924(a)(1)(D), or 924(a)(1)(A) Unconstitutional.

The Tenth Amendment provides:  "The powers not delegated to
the United States by the Constitution, nor prohibited by it to
the States, are reserved to the States respectively, or to the
people."  U.S. Const. amend. X.  The Supreme Court has held:

> If a power is delegated to Congress in the
> Constitution, the Tenth Amendment expressly
> disclaims any reservation of that power to the
> States; if a power is an attribute of state
> sovereignty reserved by the Tenth Amendment, it is
> necessarily a power the Constitution has not
> conferred on Congress. . . .  "This amendment is a
> mere affirmation of what, upon any just reasoning,
> is a necessary rule of interpreting the
> constitution.  Being an instrument of limited and
> enumerated powers, it follows irresistibly, that
> what is not conferred, is withheld, and belongs to
> the state authorities."  3 J. Story, Commentaries
> on the Constitution of the United States 752
> (1833).  This has been the Court's consistent
> understanding:  "The States unquestionably do
> retai[n] a significant measure of sovereign

> authority . . . to the extent that the
> Constitution has not divested them of their
> original powers and transferred those powers to
> the Federal Government." *Garcia v. San Antonio*
> *Metropolitan Transit Authority*, 469 U.S. 528, 549
> (1985)(internal quotation marks omitted).

*New York v. United States*, 505 U.S. 144, 156 (1992).  In

addition, the Supreme Court explained:

> The Tenth Amendment . . . restrains the power of
> Congress, but this limit is not derived from the
> text of the Tenth Amendment itself, which, as we
> have discussed is essentially a tautology.
> Instead, the Tenth Amendment confirms that the
> power of the Federal Government is subject to
> limits that may, in a given instance, reserve
> power to the States.

*Id*.  Thus, if Congress has the power to act, its actions do not

violate the Tenth Amendment.

Congress may regulate interstate commerce pursuant to the

Commerce Clause of the United States Constitution.  *U.S. v.*

*Lopez*, 514 U.S. 549, 558 (1995).  The Supreme Court noted there

are three categories of activity that Congress can regulate or

protect under the Commerce Clause:  (1) keeping the channels of

interstate commerce free from immoral and injurious uses,

(2) regulating and protecting the instrumentalities of interstate

commerce or persons or things in interstate commerce even if the

threat only comes from intrastate activities, and (3) regulating

activities that have a substantial relation to interstate

commerce.  *Id*. (quotations and citations omitted).

Numerous cases have upheld the regulation of firearms as a

valid exercise of Congress's power to regulate commerce under the
Commerce Clause.  *See, e.g., Huddleston v. United States*, 415
U.S. 814 (1974)(18 U.S.C. §§ 922(a)(6) and (d)(1) are valid
exercises of Congress's power under the Commerce Clause); *United
States v. Stewart*, 451 F.3d 1071 (9th Cir. 2006)(upholding
§ 922(o) as a valid exercise of Congress's commerce power);
*Gillespie v. Indianapolis*, 185 F.3d 693 (7th Cir. 1999)(upholding
18 U.S.C. § 922(g)(9), which prohibits persons convicted of
domestic violence crimes from possessing firearms, as a valid
exercise of Congress's Commerce Clause power); *United States v.
Minnick*, 949 F.2d 8 (1st Cir. 1991)(holding § 922(g), which
prohibited possession of firearms by felons, did not violate
Tenth Amendment); *United States v. Crandall*, 453 F.2d 1216, 1217
(1st Cir. 1972)(holding prohibition against false statements on
federal firearms forms is a valid exercise of Congress's Commerce
Clause power even though there are not any specific references to
interstate commerce in the statute because the "section regulates
transactions with licensed dealers, whose general involvement
with interstate commerce is ample to justify federal regulation
of even their intrastate sales"); *United States v. Lebman*, 464
F.2d 68, 70-71 (5th Cir. 1972)(holding 18 U.S.C. §§ 922(b)(3),
922(b)(5), and 922(m) are valid exercises of Congress's commerce
clause power).

    Because 18 U.S.C. §§ 922(a)(5), 924(a)(1)(D), and

924(a)(1)(A) are valid exercises of Congress's power under the
Commerce Clause, they do not offend or implicate the Tenth
Amendment.

## III. 18 U.S.C. §§ 922(a)(5), 924(a)(1)(D), and 924(a)(1)(A) Are Not Unconstitutional under the Second or Ninth Amendments.

In his Motion, Defendant contends he has an inalienable
right to keep and to bear arms under the Second and the Ninth
Amendments to the United States Constitution that is violated by
18 U.S.C. §§ 922(a)(5), 924(a)(1)(D), and 924(a)(1)(A).  In his
Reply, Defendant concedes the Ninth Circuit has held the Second
Amendment does not protect an individual's right to keep or to
bear arms.  *See Silveria v. Lockyear*, 312 F.3d 1052 (9th Cir.
2002).  Defendant, however, continues to assert that his right to
keep and to bear arms is protected under the Ninth Amendment and
that 18 U.S.C. § 922(a)(5), 924(a)(1)(D), and 924(a)(1)(A)
violate those rights.

The Ninth Amendment to the United States Constitution
provides:  "The enumeration in the Constitution, of certain
rights, shall not be construed to deny or disparage others
retained by the people."  U.S. Const. amend. IX.  The Ninth
Amendment "has not been interpreted as independently securing any
constitutional rights for purposes of making out a constitutional
violation."  *Schowengerdt v. United States*, 944 F.2d 483, 490
(9th Cir. 1991).  "It is a common error, but an error
nonetheless, to talk of 'ninth amendment rights.'  The ninth

9 - OPINION AND ORDER

amendment is not a source of rights as such; it is simply a rule about how to read the Constitution." *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996)(quotation omitted).  In addition, "the Ninth Amendment does not encompass an unenumerated, fundamental, individual right to bear firearms." *Id.*

Accordingly, the Court concludes Defendant's argument that 18 U.S.C. §§ 922(a)(5), 924(a)(1)(D), and 924(a)(1)(A) infringe his inalienable rights to keep or to bear arms under the Ninth Amendment is without merit.

## IV.  The Export Clause of the United States Constitution Does Not Render 18 U.S.C. §§ 922(a)(5), 924(a)(1)(D), or 924(a)(1)(A) Unconstitutional.

Defendant contends Article I, Section 9, Clause 5 of the United States Constitution (the Export Clause) renders 18 U.S.C. §§ 922(a)(5), 924(a)(1)(D), and 924(a)(1)(A) unconstitutional because those statutes create a licensing scheme prohibited by the Export Clause.

The Export Clause provides:  "No Tax or Duty shall be laid on Articles exported from any State."  Defendant contends Congress has promulgated a "licensure scheme" through 18 U.S.C. §§ 922(a)(5), 924(a)(1)(D), and 924(a)(1)(A) to prohibit the export of firearms from one state to another unless the sale is to or through a Federal Firearms Licensee at a cost of at least $200.  According to Defendant, therefore, these statutes create

10 - OPINION AND ORDER

an unconstitutional tax or duty on firearms exported from "any
state."

The Export Clause was adopted to serve the broad purpose of
"'forbid[ding] federal taxation of exports.'"  *Int'l Bus. Mach.
Corp. v. United States*, 59 F.3d 1234, 1239 (Fed. Cir. 1995)
(quoting *Dep't of Revenue v. Ass'n of Wash. Stevedoring Cos.*, 435
U.S. 734, 758 (1978)).  The Supreme Court has noted "the Export
Clause . . . specifically prohibits Congress from regulating
international commerce through export taxes, disallows any
attempt to raise federal revenue from exports, and has no direct
effect on the way the States treat imports and exports."  *United
States v. IBM*, 517 U.S. 843, 859 (1996).

In *Florida Sugar Marketing and Terminal Association, Inc. v.
United States*, the Federal Circuit held the Export Clause does
not prohibit federal taxes on interstate shipments.  220 F.3d
1331 (Fed. Cir. 2000), *cert. denied*, 531 U.S. 1191 (2001).  In
reaching its decision, the Federal Circuit examined reports of
the Constitutional Convention and historical analyses of the
drafting efforts behind the Export Clause.  The court concluded
there were "strong indicators that the Constitution's drafters
intended only to prohibit taxes on foreign commerce, not
interstate shipments."  *Id*. at 1335-39.  The Federal Circuit also
examined numerous Supreme Court cases from the eighteenth
century, including some of those cited by Defendant, and noted

11 - OPINION AND ORDER

> while there is not Supreme Court precedent
> directly on point *Dooley* [*v. United States*, 183
> U.S. 151, 157 (1901)] and the dicta in both
> [*United States v.*] *Hvoslef*[, 237 U.S. 1, 13
> (1915)] and [*United States v.*] *International
> Business Machines*[, 517 U.S. 843, 859 (1996),]
> provide this court with consistent guidance from
> the Supreme Court indicating that the Export
> Clause cannot logically be interpreted to ban
> federal taxes on interstate shipments from one
> port to another.

*Id.* at 1341. Accordingly, the Federal Circuit concluded "the

Export Clause does not prohibit federal taxes on interstate

shipments." *Id.* The Court finds the Federal Circuit's reasoning

and analysis in *Florida Sugar* is persuasive.

Here Defendant contends the "licensure scheme" contained in

18 U.S.C. §§ 922(a)(5), 924(a)(1)(D), and 924(a)(1)(A) is

unconstitutional under the Export Clause. The Court concludes,

however, the Export Clause does not prohibit federal taxes or

licensing fees on interstate shipments, and, therefore,

Defendant's claim is without merit.

In summary, the Court finds the statutes under which

Defendant was convicted are not unconstitutional, and, therefore,

this Court has jurisdiction.


## CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion for

Arrest of Judgment (#89), and directs the Clerk of Court to enter

the Judgment of Conviction consistent with the sentence imposed

12 - OPINION AND ORDER

in open court on January 9, 2007.

IT IS SO ORDERED.

DATED this 15th day of February, 2007.

*anna Gronnun*

ANNA J. BROWN
United States District Judge

13 - OPINION AND ORDER